## IN THE MATTER OF THE ESTATE OF H. WILHELM WOLTERS, DECEASED.

### No. 1392.

RESERVED QUESTIONS FROM CIRCUIT JUDGE FIRST CIRCUIT. HON. J. T. DeBOLT, JUDGE.

SUBMITTED FEBRUARY 9, 1923.　　　　　DECIDED MAY 2, 1923.

PERRY AND LINDSAY, JJ., AND CIRCUIT JUDGE BANKS IN PLACE OF PETERS, C. J., DISQUALIFIED.

WILLS—*probate, establishment and annulment—questions for determination.*

The validity and effect of particular provisions of a will are not determined by its admission to probate but are open to litigation in other proceedings.

SAME—*requisites and validity—partial invalidity.*

The inclusion in a will of particular bequests that are invalid because contrary to statute or to public policy does not invalidate the whole will or other particular bequests which are in themselves in every way unobjectionable to law,—when the valid provisions can be separated from the invalid and upheld without doing injustice to any of the beneficiaries under the will or defeating the general intent of the testator.

Upon an agreed statement of facts, five questions of law have been reserved by the probate judge for the consideration and determination of this court. The facts, substantially, are these:

H. Wilhelm Wolters, an American citizen and a resident of Honolulu, died in Honolulu on December 15, 1918, leaving both real and personal property within the Territory of Hawaii. On August 4, 1917, he executed a last will duly attested by two competent witnesses and otherwise executed with all of the formalities required by law for a valid will. The provisions of the will were briefly as follows: (1) a direction for the payment of all just debts and funeral expenses; (2) a bequest of 25 shares of Oahu Sugar Company stock to testator's brother, Carl Wolters, then residing in San Francisco, California; (3) a bequest of 25 shares of Oahu Sugar Company stock to another brother, Hermann Wolters, then residing at Kealia, Kauai; (4) a bequest of 25 shares of Oahu Sugar Company stock to a nephew; (5) a bequest of 25 shares of Oahu Sugar Company stock to a niece; (6) a bequest to Diedr. Harves, then residing in Bremen, Germany, of 50 shares of Oahu Sugar Company stock "in appreciation of having given much attention and care to our family burial ground in Bremen" and in consideration of future care of the same; (7) a devise and bequest to Jose Caetano, a resident of Honolulu, of 100 shares of Oahu Sugar Company stock, a lot on Green and Kapiolani streets, Honolulu, then last assessed for taxation purposes at $8725, and a lot on Tantalus, Oahu, then last assessed for taxation purposes at $700; (8) a bequest to the Bremer Handels Museum in Bremen, Germany, of all of the testator's collection of postage stamps, "upon trust to hold the same in perpetuity under the name of Wilhelm Wolters Collection;" (9) a bequest to the Bremer Handels Museum of the sum of $5000 upon trust to invest the

same and to apply the interest and as much of the capital as necessary to the classification, maintenance, preservation and extension of the said collection; (10) a devise and bequest of all of the remainder of the property of the testator to Jose Caetano, C. C. von Hamm, James L. Cockburn and John L. Fleming, all residents of Honolulu, and Hermann Wolters, residing at Kealia, Kauai, as trustees to hold the same for the period of ten years from the date of the death of the testator, upon the following trusts and for the following purposes: (a) to pay each year out of the net income to the testator's brother Carl, of San Francisco, an annuity of $500, to his brother Hermann at Kealia an annuity of $500, to his nephew William an annuity of $250, to his niece Helene an annuity of $250 and to Jose Caetano an annuity of $500,— with a proviso that in case the net income in any year should be insufficient to pay the annuities, then to distribute the net income of that year proportionally among the said annuitants; and (b) upon the expiration of the trust term of ten years, to transfer, pay over and deliver to the Free and Hansa Town of Bremen, Germany, the residuary trust estate together with the accumulated income therefrom "for the benefit of such institutions, public or private, scientific, educational or charitable, which may be beneficial to the population of Bremen as may be decided upon from time to time by the proper authorities of the said Free and Hansa Town of Bremen."

There is a further provision in the will appointing Jose Caetano, C. C. von Hamm, James L. Cockburn, John L. Fleming and Hermann Wolters as executors of the will.

At the time of the making of the will under consideration, the testator knew that he was suffering from tuberculosis and this disease caused his death on the date above stated. Upon the presentation of the will for probate a contest was filed and is being maintained against its pro-

bate by the brother, Hermann Wolters, who, in the absence of a will, would inherit as one of the heirs at law.

The reserved questions are as follows:

1. Should the said alleged will be denied probate by reason of the attempted legacies provided by the eighth and ninth items of said alleged will to the said Bremer Handels Museum or by reason of any of the said legacies?

2. Should the said alleged will be denied probate by reason of the attempted residuary trust in favor of said Free and Hansa Town of Bremen, provided by the tenth item of said alleged will?

3. Should the said alleged will be denied probate by reason of the said attempted legacies to said Bremer Handels Museum and said attempted residuary trust in favor of said Free and Hansa Town of Bremen?

4. Should the legacies in said will to the Bremer Handels Museum be declared void as an attempted transfer of property to an enemy of the United States in time of war?

5. Should the residuary trust in said will in favor of the Free and Hansa Town of Bremen be declared void as an attempted transfer of property to an enemy of the United States in time of war?

The contention of the contestant is that the execution of the will by the testator at a time when the United States was at war with Germany was a violation of the Espionage Act passed June 15, 1917 (Fed. Stats. Ann., 1918 Suppl., p. 123), and of the amendments thereto of May 16, 1918 (*Ib.* p. 122), and of the Trading with the Enemy Act of October 6, 1917 (*Ib.* p. 846), was in violation of public policy, was an act favoring and tending to give comfort as well as financial aid to the enemy and constituted a breach of the duty of allegiance which the testator owed to the United States. An argument upon

these points is presented at length in the various briefs on behalf of the contestant.

While the admission of a will to probate "operates as an adjudication that it was duly executed and attested as a will, and was not forged, or procured by fraud; that the testator had sufficient mental capacity to make a will, was of testamentary age, and had authority to dispose of property by will; and that the attesting witnesses were competent and credible," (23 A. & E. Ency. L. 134) and while perhaps also it operates as an adjudication that the whole will is not for any other reason void, it is equally well established that "since courts of probate are not courts of construction, the validity and effect of the provisions of a will are not determined by its admission to probate, but are open to litigation in other proceedings." *Ib.* 135. In other words, "in proceedings to probate a will, the only proper and necessary matters for consideration and determination are the testamentary capacity of the testator, the due execution of the will in accordance with the statutory requirements, and the presence or absence of fraud, mistake, or undue influence; matters of interpretation and construction, as well as the validity of particular bequests and devises, are not involved and are without the power of the court to consider and determine." 40 Cyc. 1231. This is familiar law within this jurisdiction. It does not seem to be disputed by the contestant. It is urged, however, on his behalf that the whole will is void because it was executed in violation of our statutes and of public policy and because that is void which is prohibited by the law. It is entirely clear that if the devises of realty and the bequests of personalty to Jose Caetano, an American citizen residing in the Territory of Hawaii, and the bequests of Oahu Sugar Company stock to the brothers Carl and Hermann, both residents of the United States, (whether the nephew

William and the niece Helene were at the date of the death of the testator residents of the United States or of Germany does not appear from the record) had stood by themselves in a will without the accompaniment of the alleged objectionable clauses of this will, such devises and bequests to Caetano and to the two brothers would have been valid and in every way unobjectionable to the law. No contention is made by the contestant to the contrary. There is nothing in the Espionage Acts or in the Trading with the Enemy Act either expressly or by implication curtailing the right of an American citizen even though of German descent to make a will. Assuming but not deciding that the arguments are sound which are advanced on behalf of the contestant concerning testamentary gifts to Germany or to one of her constituent states or to a museum or other educational institution within her borders or to persons resident in Germany, the result would be at most that any particular devise or bequest to the prohibited beneficiaries would be invalid but in no event would the presence of any such invalid provisions render, in our opinion, the whole will void or invalidate the other provisions which, if standing alone, would have been entirely unobjectionable to the law and valid. "It is a rule of general application that if a will is valid as to some of its provisions and invalid as to others, and the valid provisions can be separated from the invalid, and upheld without doing injustice to any of the beneficiaries under the will, or defeating the general intent of the testator, the will must be sustained in so far as it is valid." 40 Cyc. 1080. Should Jose Caetano, an American citizen residing in America and an entirely innocent beneficiary, be denied the benefit of the devises and bequests in his favor, important as they may well be to him, simply because in some of the other clauses of the will futile efforts were made by the testator to devise or

bequeath in violation of law or of public policy (if he did)? Should other equally innocent beneficiaries be denied the benefit of the provisions which the testator made for them? We know of no statute and of no principle of law or of justice or of logic requiring any such result upon the facts of this case.

. Continuing the assumption above indulged in of invalidity of some of the provisions of the will, it is immaterial that 96.41% of the value of the estate of the decedent would pass under the alleged invalid provisions. The validity of the provisions made in favor of innocent American citizens cannot be tested by any such theory of percentages.

We express no opinion as to the applicability of the Espionage Acts or of the Trading with the Enemy Act or of the considerations of public policy and individual duty which have been invoked to the provisions of the will in favor of the museum or of the Free and Hansa Town of Bremen. That question does not arise upon a petition for the admission of the will to probate.

. The first, second and third questions are answered in the negative. The fourth and fifth are left unanswered.

*Robertson & Castle* and *H. Holmes,* for temporary administrators.

*Frear, Prosser, Anderson & Marx* and *Thompson, Cathcart & Ulrich* for contestant.

*Smith & Wild* for Free and Hansa Town of Bremen.

*E. A. Mott-Smith* for the alien property custodian.